# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ROBERT J. SOSNOSKIE,

        Petitioner,

        -vs-

TIMOTHY BRUNSMAN, Warden,

        Respondent.

:

:

:

Case No. 3:10-cv-267

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits, considering the Petition (Doc. No. 2), the Return of Writ (Doc. No. 6), and the Petitioner's Traverse (Doc. No. 10).

The background facts are set forth in the opinion of the Second District Court of Appeals on direct appeal:

> On June 19, 1971, Sosnoskie was selling magazine subscriptions door to door. He came to the home of seventy-six-year-old Perry Smith, who invited him in. Sosnoskie claims that Smith went to his bedroom for money to pay for the subscription that he ordered, but that when Smith returned, he demanded that Sosnoskie leave immediately and threatened to call the police. At first, Sosnoskie claimed that Smith had lunged at him, but he later stated that he was not sure that was true. Sosnoskie grabbed "something" and beat Smith so badly that he was left motionless on the floor where he died. Before he left, Sosnoskie searched Smith's clothing, ripping his pockets, and he tore apart Smith's home in his search for money.
>
> Smith sustained numerous injuries, including bruises from his head to his thighs, cuts on his face and head, and swelling to his brain. He also had multiple fractures to his shoulders and ribs and defensive injuries

to his arm and hand. The coroner opined that the injuries were caused by blunt-force trauma, and that the injuries could have been caused by a beating with a whetstone that was found next to Smith's body. Smith's death was caused by a heart attack as a direct result of the brutal beating.

Retired Major Samuel Mains of the Montgomery County Sheriff's Office was first on the scene. When he arrived, he found the entire home ransacked. Mains entered through the kitchen, where cabinets were opened, and Smith's belongings were strewn about the floor. In the living room couch cushions had been removed, taken apart, and tossed on the floor. The hallway to the bedroom with also full of Smith's belongings. In the bedroom, every drawer had been opened and dumped out. The mattress was pulled off of the bed, and everything was pushed off of the shelves. In Smith's closet, the clothes rod was out of place, and his clothes had fallen to the floor. Also, the metal duct work running through the top of the closet had been ripped out.

Smith's badly beaten body was found amongst his belongings on his bedroom floor. Mains found a handled whetstone laying next to Smith's right leg, which he believed to be the murder weapon, because of its location and the fact that the marks on Smith's t-shirt matched the size and shape of the whetstone.

Mains requested the assistance of Ohio Bureau of Criminal Identification (BCI) Agents Stephen Koch and Charles Boynet in investigating the crime. While Koch and Boynet processed the scene, Mains and other officers canvassed the neighborhood. Koch and Boynet recovered seventy latent prints from Smith's home, along with other evidence. Thirty of the prints were found to belong to Smith, but forty were not identified at that time. Because there was no nation-wide automated database of known fingerprints in 1971, there was no way to compare the crime scene prints to any prints other than those of specific suspects or prints held in BCI's own files. Because Sosnoskie's name never came up during the investigation, the case eventually went cold.

Detective Ward of the Montgomery County Sheriff's Office was assigned the cold case in 2006. He reviewed all of the evidence and submitted the unidentified latent prints to the Miami Valley Regional Crime Lab to be run through the Automated Fingerprint Identification System (AFIS), a national database of several million fingerprints that was established in 1990. An examiner entered the fourteen clearest prints into the AFIS system. The system matched the two best prints

with Sosnoskie. The examiner then obtained a complete set of Sosnoskie's fingerprints and visually compared them to all thirty of the latent prints submitted by Ward. Seventeen were identified as belonging to Sosnoskie.

Ward tracked Sosnoskie to a rural part of northern Wisconsin and contacted authorities there to confirm his address. On May 10, 2007 Ward and his partner, Detective Brad Daugherty, traveled to Dunn County, Wisconsin, to interview Sosnoskie. The following morning Ward and Daugherty met with Wisconsin Division of Criminal Investigation Investigator Rob Ebben and Dunn County Sheriff's Office Detective Craig Cozier, and the four made the forty-five minute drive to Sosnoskie's home.

Ebben and Cozier went to Sosnoskie's front door, where Ebben identified himself and told Sosnoskie that he had unpaid traffic fines in Nebraska and that he could come to the local sheriff's department to pay his fines. The officers explained that it was strictly voluntary, he was not under arrest, and he could leave at any time. Sosnoskie claimed that he had been trying to take care of the fines and agreed to accompany the officers. Sosnoskie asked them for a ride to and from the station.

At the station, Ebben put Sosnoskie in an interview room and told him that Ward and Daugherty "were investigators here to talk to him about an unrelated matter." Ebben introduced Ward and Daugherty, who gathered Sosnoskie's background information before beginning to interview Sosnoskie about Smith's murder. Because Sosnoskie was not under arrest, the officers did not advise him of his rights under Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Several times during the interview, the officers reminded Sosnoskie that he was not under arrest and that he was free to leave. Sosnoskie was pleasant and cooperative throughout the interview, and he explained what had happened at Smith's home.

At the conclusion of the interview, Ebben and Cozier drove Sosnoskie back to his home. The following day Ward and Daugherty arrested Sosnoskie, and began the extradition procedure. Later that month, Daugherty returned to Wisconsin to bring Sosnoskie back to Ohio. Before they began their drive, Daughterty advised Sosnoskie of his Miranda rights, which he waived. As they drove, Sosnoskie repeated the information that he had already provided, with a few clarifications.

In September, 2007, Sosnoskie was indicted on one count of Second-Degree Murder. The following month, he filed a motion to

suppress his confessions, which the trial court overruled from the bench, without issuing a written decision. In March, 2008 Sosnoskie was tried by a jury, which found him guilty as charged. The trial court sentenced Sosnoskie to life in prison. Sosnoskie appeals from his conviction and sentence.

*State v. Sosnoskie,* 2009 Ohio 2327, 2009 Ohio App. LEXIS 1986, ¶¶2-12 (Ohio App. 2nd Dist. May 15, 2009).

Petitioner pleads four grounds for relief:

> **GROUND ONE:** The Trial Court erred in failing to exclude evidence gained against the Appellant in violation of his rights pursuant to the 4th, 5th, 6th, 14th Amendment to the U.S. Constitution as well as comparable portions of the Ohio Constitution. Appellant received suppression related ineffective Assistance of counsel.
>
> **GROUND TWO:** Appellant was deprived of effective assistance of counsel as guaranteed to him under the Sixth and Fourteenth Amendment of The U.S. Constitution.
>
> **GROUND THREE:** Appellant's conviction is against the Manifest Weight of the Evidence.
>
> **GROUND FOUR:** The Cumulative effect of errors occurring at trial deprived appellant of a fair trial.

(Petition, Doc. No. 2).

## Motion to Add Additional Grounds

In his Traverse, Petitioner asserts that he has four other grounds for relief, to wit, the grounds that were pled as part of his Application to Reopen under Ohio R. App. P. 26(B). There are only three Assignments of Error he alleged should have been raised:

**Assignment of Error Number One:**

> The Trial Court improperly allowed the Jury to question the witnesses contrary to both the rule established by the Ohio Supreme Court, and his right guaranteed to him by the Fourteenth Amendment to the United States Constitution.
>
> **Assignment of Error Number Two:**
>
> The trial Court erred in not allowing the Appellant's Trial Counsel to file a Rule 29 Motion for Acquittal, which was supported by facts in the record showing that the State failed to present sufficient evidence to sustain the Appellant's Conviction, violative of the Appellant's guaranteed right to Due Process of Law, and a fair trial.
>
> **Assignment of Error Number Three**
>
> The prosecutor was malicious in the prosecution of the Defendant after 38 years and after having destroyed most of the evidence in the case, and all exculpatory evidence, thus depriving Defendant of his right to a fair trial as is guaranteed by the Fifth and Fourteenth Amendment[s] to the U.S. Constitution, Articl[e] I, Section 10 of the Ohio Constitution.

(Application, Ex. 13 to Return of Writ, PageID 267-271.)

Petitioner contends that these three grounds were on a separate piece of paper attached to his Petition, but no such extra sheet has been received by the Clerk. Petitioner moves in the alternative to amend his Petition to add these grounds (Traverse, Doc. No. 10, PageID 824).

Under 28 U.S.C. § 2242, a habeas petition may be amended as is provided in Fed. R. Civ. P. 15. In considering whether to grant motions to amend under Rule 15, a court should consider whether the amendment would be futile, i.e., if it could withstand a motion to dismiss under Rule 12(b)(6). *Hoover v. Langston Equip. Assocs.,* 958 F.2d 742, 745 (6th Cir. 1992); *Martin v. Associated Truck Lines, Inc.,* 801 F.2d 246, 248 (6th Cir. 1986); *Marx v. Centran Corp.*, 747 F.2d 1536 (6th Cir. 1984); *Communications Systems, Inc., v. City of Danville*, 880 F.2d 887 (6th Cir. 1989). *Roth Steel*

*Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983); *Neighborhood Development Corp. v. Advisory Council*, 632 F.2d 21, 23 (6th Cir. 1980).

The Court finds that amending the Petition to add these three claims would be futile because they are barred by the one-year statute of limitations in 28 U.S.C. § 2244(d). When Mr. Sosnoskie filed his original Petition on July 7, 2010, 323 days of that one year had expired. (See calculation in note 2 of the Return of Writ, Doc. No. 6, PageID 27). By the time the motion to amend was made in the Traverse on December 23, 2010, an additional 169 days had expired, putting the motion well outside the one-year limit. These three claims do not arise out of the same transaction or occurrence as the original claims and therefore would not relate back to the time of the original filing under Fed. R. Civ. P. 15(c). *Mayle v. Felix*, 545 U.S. 644 (2005).

There is a more fundamental reason why the amendment would be futile: Mr. Sosnoskie procedurally defaulted in presenting these claims to the Ohio courts. Presenting them as claims underlying a claim of ineffective assistance of appellate counsel does not preserve them for consideration on the merits in federal habeas corpus. *Davie v. Mitchell,* 547 F.3d 297 (6th Cir. 2008)(Rogers, J.), and *Garner v. Mitchell,* 502 F. 3d 394 (6th Cir. 2007)(Moore, J.), both citing *White v. Mitchell,* 431 F.3d 517, 526 (6th Cir. 2005); *Moore v. Mitchell,* 531 F. Supp. 2d 845, 862 (S.D. Ohio 2008)(Dlott, J.); see also *Bailey v. Nagle,* 172 F.3d 1299, 1309 n. 8 (11th Cir. 1999); and *Levasseur v.Pepe*, 70 F.3d 187, 191-92 (1st Cir. 1995).

Mr. Sosnoskie argues that any procedural default in bringing these three claims or any of the four original claims should be excused because it would be a manifest miscarriage of justice not to hear his claims. However, the manifest miscarriage of justice exception to the procedural default

rules is limited to situations of actual innocence. To show actual innocence, a habeas petitioner must produce new evidence – scientific, physical, or reliable eyewitness testimony - which is sufficiently credible when considered with the evidence at trial that no rational juror could have found the petitioner guilty beyond a reasonable doubt. " *Schlup v. Delo*, 513 U.S. 298, 316 (1995); *House v. Bell,* 547 U.S. 518 (2006). Mr. Sosnoskie has not produced any new evidence of his actual innocence. Therefore his request to amend and to excuse his procedural defaults on the basis of actual innocence must be denied.

### Procedural Default of the Four Originally Pled Grounds for Relief

Respondent asserts that all four of Mr. Sosnoskie's originally pled grounds for relief are procedurally defaulted because he did not timely appeal to the Ohio Supreme Court from the affirmance of his conviction in the Ohio Court of Appeals.

The record shows that the Court of Appeals affirmed his conviction on May 15, 2009. *State v. Sosnoskie, supra.* He did not file a notice of appeal from that decision until November 10, 2009 (See Exhibits 10 & 11 to Return of Writ). The relevant Rule of Practice of the Ohio Supreme Court, Rule II, §2(A), requires that a notice of appeal be filed within forty-five days of the date of the appeals court judgment. That Rule is an adequate and independent state ground of decision which, if enforced by the Ohio Supreme Court against a defendant, will bar him from later bringing those claims in habeas corpus. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

As grounds for his delay, Petitioner asserts his direct appeal counsel, Ben Swift, did not

notify him of the Court of Appeals decision.  However, as the Warden points out (Return of Writ, Doc. No. 6, PageID 31), Sosnoskie admitted in his motion for delayed appeal to the Ohio Supreme Court that he had learned of the Court of Appeals decision by July 7, 2009.  If this Court were to excuse any delay until he learned of the decision, Mr. Sosnoskie would still have to find some other cause and prejudice to excuse his additional four month delay in filing in the Ohio Supreme Court.  The Ohio Supreme Court itself found no such excuse, as it denied his leave to file a delayed appeal.

Mr. Sosnoskie asserts that the Ohio Supreme Court "does allow a multitude of delayed appeals" and he therefore asserts that its rule requiring filing within forty-five days is not "regularly followed."  He is correct that under *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), a state rule must be regularly followed.  See also *Eley v. Bagley*, 604 F.3d 958, (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), citing *Maupin*; *accord Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407 (2001).  He cites three names of defendants who have received delayed appeals and argues there is a "list too long to bore this Court with citing." (Traverse, Doc. No. 10, PageID 828.)  Spot checking the first of the names Sosnoskie lists, the Court finds that his motion for delayed appeal was granted without explanation, but then his appeal was not accepted for review, also without explanation.  Compare *State v. Gray*, 124 Ohio St. 3d 1504 (March 10, 2010), with *State v. Gray,* 125 Ohio St.3d 1462 (June 23, 2010).  Consulting the current issue of the Ohio State Bar Association Report (December 27, 2010), the Court notes that on December 1, 2010, the Ohio Supreme Court denied motions for delayed appeal in all thirteen cases with such motions  it considered that date.

In *Beard v. Kindler*, 558 U.S. ___,  130 S. Ct. 612, 175 L. Ed 2d 417 (2009), the Supreme

Court considered a Third Circuit ruling that held Pennsylvania's fugitive forfeiture rule was not firmly established and regularly followed.  By an 8-0 margin, the Court held a discretionary rule can serve as an adequate ground to bar federal habeas review; its discretionary character does not mean it is not regularly followed.  It reasoned

> [A] discretionary rule can be "firmly established" and "regularly followed"--even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others. See Meltzer, State Court Forfeitures of Federal Rights, 99 Harv. L. Rev. 1128, 1140 (1986) ("[R]efusals to exercise discretion do not form an important independent category under the inadequate state ground doctrine").
>
> A contrary holding would pose an unnecessary dilemma for the States: States could preserve flexibility by granting courts discretion to excuse procedural errors, but only at the cost of undermining the finality of state court judgments. Or States could preserve the finality of their judgments by withholding such discretion, but only at the cost of precluding any flexibility in applying the rules.

*Id.* at 612.  Applying *Beard* to this case, the Magistrate Judge finds Petitioner's original four claims are barred by his failure to timely appeal to the Ohio Supreme Court.

**Conclusion**

Petitioner defaulted in presenting his claims to the Ohio courts and has not shown excusing cause and prejudice or actual innocence.  His Petition should therefore be dismissed with prejudice.

Because reasonable jurists would not disagree with this conclusion, he should be denied any requested certificate of appealability and leave to appeal *in forma pauperis*.

December 30, 2010.

> s/ **Michael R. Merz**
> United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).