## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

ROBERT J. SOSNOSKIE,

:

      Petitioner,                         Case No. 3:10-cv-267

:         District Judge Walter Herbert Rice

   -vs-                             Magistrate Judge Michael R. Merz

TIMOTHY BRUNSMAN, Warden,

:

      Respondent.

---

### SUPPLEMENTAL REPORT AND RECOMMENDATIONS

---

      This habeas corpus case is before the Court on Petitioner's Objections (Doc. No. 13) to the Magistrate Judge's Report and Recommendations ("R&R," Doc. No. 11) recommending that the Petition be dismissed. The General Order of Reference for the Dayton location of court permits a magistrate judge to reconsider decisions or reports and recommendations when objections are filed.

      Petitioner is serving a sentence of fifteen years to life for the 1971 murder of Perry Smith. His conviction did not occur until 2008. Although many fingerprints besides the victim's were found in the victim's home where he was beaten to death, they did not match any prints in the Ohio Bureau of Criminal Identification files and the case went "cold." After the nationwide Automated Fingerprint Identification System (AFIS) was created, the best prints from the scene were run through that system. Two matched Petitioner Sosnoskie who was then apprehended in rural northern Wisconsin.

The Petition contains four grounds for relief.  In his Traverse Mr. Sosnoskie asserted four additional grounds which he says were on a piece of paper attached to his Petition, but the Clerk did not receive any such attachment.  The Magistrate Judge denied Petitioner's Motion to amend to add these grounds because it was made after the statute of limitations in 28 U.S.C. § 2244 had expired and Petitioner had procedurally defaulted in presenting these claims to the Ohio courts (R&R, Doc. No. 11, PageID 844-847).  The R&R also concludes the four original grounds were procedurally defaulted by Petitioner's failure to file a timely appeal to the Ohio Supreme Court after his conviction was affirmed.  *Id.*  PageID 847-849.  Petitioner objects to all of the conclusions in the R&R.

## Habeas Statute of Limitations

Petitioner objects that the statute of limitations in 28 U.S.C. § 2244 would not be violated by adding the claims he made in his Application for Reopening in the Ohio Appeals Court because he fully litigated the claims in that proceeding before attempting to bring them here.  This shows a misunderstanding of § 2244: it is a limitation on bringing claims in federal habeas corpus, not a general limitation on when claims must be litigated.  The time for filing habeas corpus claims usually runs for one year after the state proceedings are completed.  The federal statute sets no limit on when the state courts can entertain claims.

The R&R also concluded these claims would not relate back to the original filing date of the habeas petition because they did not arise out of the same transaction or occurrence as the originally pleaded claims.  Petitioner objects that they do in fact arise out of the same occurrence, to wit,

"petitioner's trial, conviction and sentence." (Objections, Doc. No. 13, PageID 855.) That certainly

is a common-sense reading of Fed. R. Civ. P. 15 as it relates to habeas corpus cases. However, in

*Mayle v. Felix,* 545 U.S. 644 (2005), the Supreme Court adopted a very narrow reading of Fed. R.

Civ. P. 15(c) for these cases:

> An amended habeas petition ... does not relate back (and thereby
> escape AEDPA's one-year time limit) when it asserts a new ground
> for relief supported by facts that differ in both time and type from
> those the original pleading set forth.

*Id.* at 650. The claims sought to be added were (1) trial court error in allowing the jury to question

witnesses, (2) trial court error in not allowing defense counsel to file a motion for directed verdict,

and (3) malicious prosecution. These claims postulate different types of constitutional error,

occurring at different times during the trial process, than the original claims.

### Actual Innocence

Petitioner claims any of his procedural defaults should be excused because he is actually

innocent. The Magistrate Judge concluded Petitioner had presented no new evidence of actual

innocence as required by *Schlup v. Delo*, 513 U.S. 298, 316 (1995), and *House v. Bell*, 547 U.S. 518

(2006). Petitioner objects that he could not gather any new evidence because the crime happened so

long ago and the Montgomery County Sheriff destroyed most of the physical evidence in 1992.

Petitioner seems to be asserting that the physical evidence would have yielded DNA whose testing

would have exonerated him. He states:

> The petitioner asserts that he is actually innocence [sic] of murder. He
> admits he fought with the victim but the victim was still alive when

-3-

> he left the home. Due to the police actions of complete destruction of
> the physical evidence the petitioner was prevented from performing
> DNA testing to prove that someone else, not him, was responsible for
> the victim's fatal heart attack.

(Objections, Doc. No. 13, PageID 856.)  Thus Petitioner's theory of actual innocence is that after he

beat Mr. Smith and left him for dead, someone else, who left no identifiable fingerprints, also broke

into Mr. Smith's home and beat him some more, for no apparent motive.  This theory is at best

fanciful speculation, not proof of actual innocence.  The delay in processing the evidence was caused

by Petitioner's being a fugitive from justice.  No rule of constitutional law requires state authorities

to maintain vast quantities of physical evidence in cold cases for thirty-five years on the possibility

that charges may some day be filed.  See *California v. Trombetta*, 467 U.S. 479 (1984).


### Ineffective Assistance of Counsel as Excuse for Procedural Default


Petitioner asserts his procedural default in not timely appealing to the Ohio Supreme Court

should be excused by the ineffectiveness of his appellate counsel in not notifying him of the decision

of the Ohio Court of Appeals.  The Court of Appeals affirmed the conviction on May 15, 2009;  Mr.

Sosnoskie learned of the decision on July 7, 2009; and he filed his notice of appeal on November 10,

2009.  The Ohio Supreme Court did not accept his excuse for the additional four-month delay and

denied leave to appeal.  The Magistrate Judge concluded that the Ohio Supreme Court enforced a

state procedural bar against Mr. Sosnoskie which was an adequate and independent state ground for

the decision.

Petitioner asserts that it was the Magistrate Judge who concluded four months was too long

a period to excuse for "a 68 year old[1] pro-se litigant with absolutely no legal training..." (Objections, Doc. No. 13, PageID 857.)  That conclusion was reached by the Ohio Supreme Court, not the Magistrate Judge who merely concluded the Ohio Supreme Court was enforcing its own rule.  The same rule was enforced by the Ohio Supreme Court and upheld by the Sixth Circuit in *Bonilla v. Hurley,* 370 F.3d 494 (6th Cir. 2004), where the petitioner had the added hurdle of being Spanish-speaking.

Petitioner compares the 456 months it took the State of Ohio to charge him with this murder with his own four-month delay in appealing.  However, the State moved very promptly once it was able to identify Petitioner's fingerprints at the victim's home.

Petitioner also asserts that the Ohio Supreme Court does not regularly enforce the forty-five day time limit on appeals, asserting "[t]he very fact that an actual rule exists to allow delayed appeals shows that the rule is not regularly followed. The rule would have to be that no appeals are allowed if they are late to be regularly followed."  In the R&R, the Magistrate Judge relied on recent United States Supreme Court authority to the contrary.  In *Beard v. Kindler*, 558 U.S. ___, 130 S. Ct. 612, 175 L. Ed. 2d 417 (2009), the Court held:

> [A] discretionary rule can be "firmly established" and "regularly followed"--even if the appropriate exercise of discretion may permit consideration of a federal claim  in some cases but not others. See Meltzer, State Court Forfeitures of Federal Rights, 99 Harv. L. Rev. 1128, 1140 (1986) ("[R]efusals to exercise discretion do not form an important independent category under the inadequate state ground doctrine").
>
> A contrary holding would pose an unnecessary dilemma for the

---

[1] Petitioner is quite bold to seek sympathy based on his age.  The victim, Perry Smith, was 76 years old when Sosnoskie beat him to death.

-5-

> States: States could preserve flexibility by granting courts discretion to excuse procedural errors, but only at the cost of undermining the finality of state court judgments. Or States could preserve the finality of their judgments by withholding such discretion, but only at the cost of precluding any flexibility in applying the rules.

130 S. Ct. at 618.


## Additional Claims


In the Conclusion of his Objections, Petitioner makes two additional claims.  First of all, he asserts his conviction is barred by the Ohio criminal statute of limitations applicable to second-degree murder.  Petitioner offers no proof that this claim was ever made in the state courts.  Had it been made, its resolution would have been a question of Ohio law on which the federal courts may not "second guess" the state courts.

But even as a matter of state law, it appears Petitioner's claim is unfounded.  Mr. Sosnoskie was indicted for purposely and maliciously killing another in violation of Ohio Revised Code § 2901.05[2] as it existed in 1971 (Indictment, PageID 45).  As was the case at common law, most jurisdictions provide no statute of limitations for murder.  LaFave, Israel, King, and Kerr, Criminal Procedure 3d § 18.5(a).  Current Ohio law provides no statute of limitations for murder or aggravated murder.  Ohio Revised Code § 2901.13(A)(2).  Prior Ohio law also had no statute of limitations for murder.  15 Ohio Jurisprudence 2d § 254.

_____

[2]The reference is to Ohio Revised Code § 2901.05 as it existed in 1971 when the crime was committed, prior to the recodification of Ohio criminal law which was effective January 1, 1974.  The new Ohio Revised Code § 2901.05 enacted in 1974 is not analogous to this prior code section.

Finally, Sosnoskie asserts he is actually innocent of the murder of Perry Smith because "[w]hen he left Smith's home in 1971, Smith was very much alive. He was purposely prevented from proving that someone else entered Smith's home and is actually guilty of the murder." (Objections, Doc. No. 13, PageID 860.) He bases this claim on the fact that of the 70 prints collected at the scene, 30 belonged to the victim, 17 belonged to Sosnoskie, and "the 23 other prints belong to the actual murderer or murderers." *Id.* If Sosnoskie did not intend to leave Smith for dead, why didn't he place an anonymous call for help after he "fought" with Smith, a much easier thing to do from a public pay phone in 1971 than it is today? If the 23 other prints (which were preserved and not destroyed with the rest of the evidence in 1992) belong to one or more murderers, why didn't Petitioner's counsel have them run through the AFIS system when Petitioner was charged? If they were run, who did they come back to and why are those persons suspects?

Mr. Sosnoskie does not appear to appreciate the irony of his claims. He beat a 76-year-old man to death and escaped any punishment for his crime for 37 years. Now he blames his conviction on the State's failure to preserve physical evidence which he speculates would have implicated some unknown other person who happened to break into Mr. Smith's home just after Sosnoskie beat him and then committed the actual robbery and murder. Actual innocence cannot be proved by mere speculation.

It is again respectfully recommended that the Petition be dismissed with prejudice.

March 7, 2011

s/ **Michael R. Merz**
United States Magistrate Judge

-7-

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).